**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**PATHWARD, NATIONAL ASSOCIATION,**

Plaintiff,

v.

**DYNAMIC METALS, LLC, GEM CITY METAL TECHNOLOGIES LLC, DYNAMIC INDUSTRIAL GROUP LLC, DENNIS NYSTROM,** and **DONALD NYSTROM,**

Defendants.

Case No. 26-cv-12226-FKB-EAS

Hon. F. Kay Behm

Hon. Magistrate Elizabeth A. Stafford

---

## ORDER APPOINTING RECEIVER

THIS MATTER having come before the Court upon the *First Amended Complaint* [Docket No. 9] (the "Complaint") of Pathward, National Association ("Pathward") and Pathward's *Verified Motion for Appointment of Receiver and Request for Expedited Hearing* [Docket No. 11] (the "Motion"); and the Court having ordered Defendants Dynamic Metals, LLC and Gem City Metal Technologies LLC (together, the "Borrowers") and Dynamic Industrial Group LLC ("DIG") to obtain counsel by September 9, 2026 [Docket No. 24], and the Borrowers and DIG having failed to do so; and the Clerk of this Court having entered

default against the Borrowers and DIG "for failure to plead or otherwise defend" [Docket No 34]; and Pathward having been substituted by GE Aerospace Delaware II, LLC ("Plaintiff") as plaintiff in this case [Docket No. 55]; and the Court having held a hearing on the Motion on November 18, 2026, at which counsel for Plaintiff was heard and no counsel for the Borrowers made an appearance; and the Court having determined that the relief granted herein is necessary and appropriate; and all five defendants in this case having previously expressly consented to the appointment of a receiver pursuant to Paragraph 44 of that certain Amended and Restated Forbearance Agreement dated January 23, 2026, by and among Pathward, the Borrowers, DIG, Dennis Nystrom ("Dennis"), and Donald Nystrom ("Donald," collectively with the Borrowers, DIG, and Dennis, the "Obligors"); and for the reasons stated by the Court on the record at the hearing, the Court **HEREBY ORDERS:**

1. The Motion is GRANTED as provided herein.

2. Jeffrey A. Cope of JACO Advisory Group (the "Receiver") is hereby appointed as the Receiver in this matter with exclusive control over the Receivership Assets (as defined below).

3. The Receiver shall post a surety bond in an amount of not less than $10,000 and, upon doing so, shall be entitled to rely in good faith on the protections afforded under this Order. The Receiver will perform the duties of his office in

accordance with this Order and duly account for all monies and properties which may come into his hands in connection with the receivership. The Receiver shall take such other actions as the Receiver deems reasonable and appropriate to the exercise of his authority under this Order and that the Receiver reasonably determines the Borrowers are obligated to do with respect to the Receivership Assets within the purview of this Order, but the Receiver shall not be required to take any action beyond those expressly mandated or reasonably implied by the terms of this Order.

4. The Receiver shall immediately be exclusively vested with full custody, control, and authority over all the Borrowers' current and future assets, whether real or personal, tangible or intangible, and wherever located (the "Receivership Assets"), including, without limitation:

(a) The real property of Gem City Metal Technologies LLC located at 1825 1st Street East, Dayton, Ohio 45403 (the "Ohio Real Property"), on which Plaintiff holds a mortgage and which is more fully described in the mortgage annexed to the Complaint [Docket No. 9-7] and incorporated by reference, together with all buildings, structures, improvements, machinery, apparatus and equipment, materials, supplies, and articles of personal property used in connection with or with the operation of the Receivership Assets;

(b) All fixtures of every kind or nature located in or upon, or attached to, or used or intended to be used in connection with, the operation of the Receivership Assets;

(c) All rights of control, operation, and participation over the Borrowers;

(d) All accounting systems and business records of the Borrowers, including all documents, books, records, accounts, and computer files and all passwords needed to access information and all other records concerning the income, operation, and management in any way related to the Receivership Assets or the operations of the Borrowers, and copies of all documents the Borrowers are legally obligated to retain;

(e) All accounts receivable (whether unpaid, accrued, due, or to become due), aged accounts listing, promissory notes, payment intangibles, instruments, and other rights of the Borrowers to receive the payment of money and payment in kind;

(f) The Borrowers' certifications and qualifications for manufacturing parts;

(g) All claims and causes of action of the Borrowers of any type, whether at law or in equity, in litigation, via settlement, or pursuant to any form of insurance policy or coverage, including documents identifying and

summarizing all pending litigation related to the Borrowers or impacting the Receivership Assets (excluding this action); *provided that* the Receiver shall not commence, assert, prosecute, settle, or release any claim or cause of action against Plaintiff, Pathward, General Electric Company (d/b/a GE Aerospace), or any of their respective affiliates without prior leave of this Court upon motion with notice to Plaintiff;

(h) All rights and interests under all customer purchase orders, customer contracts, equipment leases and contracts, plant leases, vendor contracts, and any other existing or pending leases and contracts related to any of the Receivership Assets;

(i) All employee payroll records, employee files, and employment applications;

(j) A list of all vendors with primary contact information, including utilities and utility accounts and contracts, and all books, records, documentation of any kind or nature, financial documents, contracts, bills, or invoices of all such vendors, and other documents, including copies of all records or documents on electronic media or in computer memory, wherever located;

(k) All equipment, machinery, inventory, furniture, vehicles, goods, and supplies pertaining to the Receivership Assets and the operations of the Receivership Assets;

(l) All patents, trademarks, copyrights and other intellectual property and confidential trade secrets of the Borrowers and all documents related thereto pertaining to the Receivership Assets and the operations of the Receivership Assets;

(m) All technical manuals for all systems, machinery, and equipment together with operating procedures pertaining to the Receivership Assets and the operations of the Receivership Assets;

(n) All permits, licenses, other contracts, other intangible property, and other regulatory documents pertaining to the Receivership Assets and the operations of the Receivership Assets;

(o) All insurance policies relating to the Receivership Assets and the operations of the Receivership Assets;

(p) All general intangibles, including customer lists relating to the Receivership Assets and the operations of the Receivership Assets;

(q) All marketing and advertising material;

(r) All cash, cash on hand, checks, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, cash management or other

financial accounts, investment accounts, bank or other deposits, and all other cash collateral (all whether now existing or later arising), royalties, issues, revenues, income, profits, utility deposits and deposits of every other kind, insurance premium refunds, and insurance proceeds and other benefits under present and future contracts or otherwise, in each case to the extent owned by the Borrowers or constituting proceeds of the Receivership Assets, wherever held and by whomever held, including any such funds held in any account at Bank of America or any other depository and any receipts diverted from the lockbox account maintained under that certain Amended and Restated Loan and Security Agreement dated January 27, 2023, by and among the Borrowers and Pathward [Docket No. 9-1] (the "Loan Agreement");

(s) All tax refund claims and tax appeal refunds, whether now existing or later arising;

(t) All records required to be kept under applicable safety and environmental laws, including, without limitation, any environmental studies, Federal or State correspondence or records, and all other records pertaining to the Receivership Assets as may be reasonably requested by the Receiver; and

(u) Any other assets or rights identified by the Receiver in which the Borrowers have rights of any kind which are not expressly excluded from the Receivership Assets and which the Receiver determines is necessary or

appropriate for the Receiver to control in fulfillment of his duties and obligations under this Order.

5. The Receivership Assets shall not include the Borrowers' real property located at 1937 Sterling Avenue, Elkhart, Indiana 46516 and 54347 Highland Boulevard, Elkhart, Indiana 46514 (together, the "Indiana Real Properties"), but the Receiver is granted the Borrowers' rights of access to and use of the Indiana Real Properties to operate the Receivership Assets, preserve the value of, and sell, all Receivership Assets. The Receiver is authorized to negotiate and resolve all outstanding litigation concerning or related to the Indiana Real Properties in the pursuit of continuing operations at the Indiana Real Properties.

6. The Receivership Assets do not include any ownership interest in tooling, fixtures, gauges, dies, molds, materials, inventory, drawings, technical data, or other property owned by, consigned by, or bailed by any customer of the Borrowers. Such customers include, without limitation, Honeywell Aerospace US LLC and its affiliates and General Electric Company (d/b/a GE Aerospace) and its affiliates (collectively, "Customer Property"). The Receiver must maintain the Borrowers' rights to possess and use the Customer Property in accordance with any agreements between the Borrowers and the applicable customer and applicable law, and must reasonably safeguard all Customer Property in the Receiver's possession or control in accordance with the Receiver's duties set forth in this Order. Unless

otherwise agreed to by the Receiver and applicable customer, within fifteen (15) business days after a customer's written request, the Receiver must provide such customer with a written inventory and acknowledgment of its Customer Property and within three (3) days after a customer's written request, must afford such customer reasonable access to inspect, tag, and audit it. The Receiver must release Customer Property to its owner within five (5) business days after written request; *provided, however* that if the Receiver asserts that a Borrower holds a valid lien in Customer Property, (a) the Receiver must identify the lien and the amount claimed in writing within that period and must release any property not subject to the asserted lien, and, (b) as applicable, the customer may obtain release of the remaining Customer Property by depositing the disputed amount into escrow pending determination by this Court. Customer Property may not be sold, abandoned, surrendered, or otherwise disposed of under this Order, and the Stay will not preclude any customer from seeking relief from this Court regarding its Customer Property.

7. The Receiver is authorized to maintain possession of, and exercise full control over, the Receivership Assets until the earlier of (a) termination of the Receivership as set forth herein; (b) such right to possession is terminated after the transfer of title to all of the Receivership Assets to a purchaser or other transferee

pursuant to a public or private sale, or as otherwise permitted under this Order; or (c) until further order of this Court.

8. The Borrowers' shareholders, members, managers, owners, officers, directors, partners, employees, agents, servants, and representatives (collectively, the "Incumbent Individuals") and the Obligors shall immediately turn over possession, custody, and control of the Receivership Assets to the Receiver and shall cooperate fully with the Receiver as the Receiver performs the duties provided under this Order, and shall immediately deliver to the Receiver all keys, lock combinations, access keys, cards, codes, fobs, passwords, electronic access, and/or passcodes (collectively, "Access Controls") necessary to access any of the Receivership Assets.

9. The Borrowers and the Incumbent Individuals shall make available to the Receiver all books and records necessary or helpful to the Receiver in the performance of his duties under this Order.

10. The Receiver may use and/or employ the Borrowers' existing personnel and management to assist the Receiver in carrying out the Receiver's duties under this Order, none of whom are, or shall be deemed to be, employees of Plaintiff. Neither the Receiver nor Plaintiff shall be deemed a successor employer to the Borrowers with respect to any obligation arising before the date of this Order, including any obligation under the Worker Adjustment and Retraining Notification Act or any similar State law.

11. This appointment of the Receiver is for the purpose of taking possession of, preserving, operating (in the Receiver's business judgment, in consultation with the Receiver Representatives (as defined below) and Plaintiff (subject to Paragraph 47 of this Order), and subject to access to funding), and marketing, selling, or otherwise disposing of the Receivership Assets, or any portion thereof (whether any such sale or disposition occurs as a going concern or otherwise), in a reasonable fashion so as to reasonably maximize the sale value of the Receivership Assets for the benefit of Plaintiff and all other creditors of the Borrowers according to their legal priorities.

12. The Receiver is authorized, only upon Plaintiff's prior written consent and with prior approval of the Court, to sell the Ohio Real Property consistent with the provisions of 28 U.S.C. § 2001 free and clear of all mortgage interests, security interests, all other liens, claims, and interests (with all such mortgage interests, security interests, all other liens, claims and interests to transfer to the net proceeds of the sale for subsequent resolution by the Court of any priority or other inter-creditor disputes), and with such sale to be carried out in accordance with the timetables specified in 28 U.S.C. § 2002 (or in accordance with such other timetables as the Court may order), at which Plaintiff, or Plaintiff's assignee or designee, is entitled to credit bid up to the full amount of the then-outstanding indebtedness owed to Plaintiff.

13. The Receiver is authorized, only upon Plaintiff's prior written consent and with prior approval of the Court, to sell any other Receivership Assets in one or more sales pursuant to 28 U.S.C. §§ 2001, 2002, and 2004 free and clear of all mortgage interests, security interests, all other liens, claims, and interests (with such mortgage interests, security interests, all other liens, claims, and interests to transfer to the proceeds of sale for subsequent resolution by the Court of any priority or other inter-creditor disputes) at which Plaintiff, or Plaintiff's assignee or designee, is entitled to credit bid up to the then-outstanding indebtedness owed to Plaintiff.

14. The Receiver shall not compromise collection of accounts receivable without the prior written consent of Plaintiff, which shall not be unreasonably withheld, or upon further order of this Court.

15. All account debtors and other persons obligated to pay the Borrowers, including all customers of the Borrowers, and Pathward with respect to any funds received in the lockbox account maintained under the Loan Agreement after the date of this Order, are directed to remit all such payments in full and without offset or deduction of any kind to the Receiver. Payment to the Receiver shall discharge the payor's obligation to the Borrowers to the extent of the payment. Nothing in this Paragraph impairs, waives, or otherwise affects any right of setoff or recoupment, or any defense, that any customer has under applicable law or its agreements with the Borrowers.

16. The Receiver is immediately authorized to borrow funds from Plaintiff on behalf of the Borrowers pursuant to the Loan Agreement or otherwise on terms negotiated between the Receiver and Plaintiff, and any such lending (which shall be in the sole discretion of Plaintiff) will be a first priority charge to any valid, perfected, and unavoidable liens that were senior to Plaintiff's liens as of the date of this Order. Nothing in this Order obligates Plaintiff, General Electric Company (d/b/a GE Aerospace), or any of their affiliates to lend, advance, or otherwise provide any funds to the Receiver, the Borrowers, or the receivership estate. Upon receiving prior written approval from Plaintiff, the Receiver shall be authorized to obtain financing from a third-party, provided that such financing is junior to all indebtedness owed to Plaintiff.

17. The Receiver is granted the fullest powers, rights, and protections of a receiver permitted under applicable law and in equity to perform the Receiver's duties and preserve, manage, secure, safeguard, and sell the Receivership Assets.

18. The Borrowers and their Incumbent Individuals shall have neither possession nor control of, nor any right to, the Receivership Assets. Without limiting the generality of the foregoing, and subject to the rights and liens of Plaintiff, the Receiver is vested with and shall discharge the following authority, powers, and duties:

(a) To maintain, secure, manage, operate, repair, and preserve the Receivership Assets and the Borrowers' operations;

(b) To change any and all Access Controls pertaining to the Receivership Assets or the business operations of the Borrowers;

(c) To exclude, at the Receiver's discretion, any Incumbent Individual from the Ohio Real Property, any other Receivership Assets, the Indiana Real Properties, and may arrange a supervised opportunity, at a time and in a manner the Receiver sets, for any Incumbent Individual to retrieve purely personal belongings that are not Receivership Assets;

(d) To suspend, terminate, disconnect, redirect, or change the credentials for any access by any Incumbent Individual to: (a) any telephone, mobile phone, or wireless account, device, or number owned, leased, or paid for by the Borrowers; (b) any email account, domain, website, server, network, cloud storage, software, database, social media account, or other electronic system or account of the Borrowers; and (c) any bank, credit card, payment-processing, vendor, or other financial account of the Borrowers; provided further that any telephone number, domain name, or account belonging to the Borrowers is a Receivership Asset, and the Receiver may port, forward, or redirect it as the Receiver deems appropriate and all service providers, carriers, financial institutions, and vendors are directed to comply

with the Receiver's instructions under this subsection without liability to any person for such compliance;

(e) To manage the business and affairs of, and to make any and all business decisions for the Borrowers, independent of and without interference from any Incumbent Individual;

(f) To request the assistance of any local or State law enforcement agency, and any private security, to enforce this Order, including removing any Incumbent Individual who refuses to leave after notice from the Receiver, with any such agency or private security company being authorized to provide that assistance pursuant to this Order;

(g) To undertake necessary audits and certifications with respect to Receivership Assets;

(h) To marshal, manage, control, take custody of, secure, supervise, maintain, operate, preserve, and make productive the Receivership Assets, including, without limitation, taking control of all tangible and intangible property necessary to operate the Borrowers at the Ohio Real Property and Indiana Real Properties;

(i) To make and effectuate any necessary or proper repairs, restorations, maintenance, replacements, alterations, additions, or

improvements to the Receivership Assets as the Receiver may from time to time deem appropriate and advisable;

(j) To select, hire, rehire, fix the compensation of, establish retention programs for, terminate, and direct the activities of all employees, managers, advisors, consultants, contractors, and other personnel of the Borrowers;

(k) To contract as necessary with providers of equipment, supplies, and services to the Borrowers, and to negotiate with creditors and suppliers with respect to all things relating to the Borrowers, including, without limitation, the terms and conditions of any ongoing contractual relationships and the terms and timing of any payments to creditors or suppliers, as dictated by the exigencies of the situation; *provided, however*, that nothing in this Order modifies, or authorizes the Receiver to unilaterally modify, the terms of any customer contract, and the Receiver takes all customer contracts subject to their terms;

(l) To retain advisors, attorneys, financial advisors, investment bankers, professionals, employees, brokers, auctioneers, appraisers, agents, clerks, outside accountants, and other suppliers of goods and services, and anyone acting on behalf of any of them (collectively, the "Receiver Representatives") in this case without further approval of the Court, as the

Receiver may deem necessary; *provided, however*, that the Receiver shall disclose to the Court and all appearing parties any Receiver Representative who is an affiliate, employee, or current professional of Plaintiff or its affiliates, and no such Receiver Representative shall have access to non-public information of any other customer of the Borrowers;

(m) To enforce, sue, defend, compromise, and settle all claims of any nature as to the Receivership Assets, provided the Receiver shall not settle a claim relating to or constituting Plaintiff's collateral without Plaintiff's prior written consent;

(n) To insure or reinsure the Receivership Assets;

(o) To exercise all rights, powers, and incidents of ownership over the Receivership Assets that the Borrowers would ordinarily have;

(p) To deal with appropriate Federal, State, and local governmental authorities on behalf of the Borrowers;

(q) To incur and pay expenses incurred in connection with the performance of the undertakings of the Receiver and Receiver Representatives under this Order;

(r) To pay and enter into agreements with respect to taxes on the Receivership Assets as funds are available and as they come due, and to

challenge the validity, enforcement, and amount of same, including any assessment or claim of taxes due by the Borrowers;

(s) To take possession of and receive from all depositories, banks, brokerages, and otherwise, any money on deposit in such institutions belonging to the Borrowers or arising from the operation of the Receivership Assets, whether such funds be in accounts titled in the name of the Borrowers or otherwise;

(t) To employ, retain, supervise, and terminate the Receiver Representatives and the Borrowers' agents, consultants, representatives, and employees as are necessary;

(u) To enter into letters of intent, asset purchase agreements and similar agreements, and execute bills of sale in connection with the sale of some or all of the Receivership Assets, provided that any of the foregoing relating to Receivership Assets that are subject to a lien and security interest of Plaintiff shall be upon the prior written consent of Plaintiff;

(v) To collect and receive all income, earnings, revenues, rents, profits, and other monies which may arise from the operation, sale, lease, or other use of the Receivership Assets;

(w) To present for payment any check, money order, credit card account, or other forms of payment made payable to the Borrowers which

constitute rent, revenue, income, profits, or receivables of any kind and collect the proceeds;

(x) To collect and process all inbound mail addressed to the Borrowers;

(y) To delete the authorized signatories on any account of the Borrowers and replace the same with the name of the Receiver or his designee;

(z) To communicate with any person or entity and obtain any information and documents the Receiver deems necessary or useful in furtherance of this Order;

(aa) To assert claims and causes of action, commence litigation, and issue subpoenas as the Receiver deems necessary to enforce this Order and determine any and all parties asserting any rights to the Receivership Assets;

(bb) To surrender to Plaintiff (or other secured party having a first priority lien in a particular Receivership Asset or otherwise abandon if such secured party refuses to take possession of such Receivership Asset) any Receivership Asset that, in the exercise of the Receiver's business judgment, is burdensome to the Receivership Estate, following at least five (5) business days written notice to Plaintiff;

(cc) (i) To determine whether it is desirable and in the best interest of the Borrowers, the creditors of the Borrowers, and other stakeholders and

interested parties of the Borrowers, that the Borrowers file a voluntary petition ("Petition") for relief under chapter 11 of title 11 of the United States Code; and (ii) upon not less than five (5) business days' prior written notice to Plaintiff, on behalf of each Borrower, (A) to execute and verify the Petition and all documents ancillary thereto, and to cause such Petition to be filed with the selected United States Bankruptcy Court commencing a chapter 11 case, and to make or cause to be made prior to the execution thereof any modifications to such Petition or ancillary documents, and (B) to execute, verify, and file or cause to be filed all other petitions, schedules, lists, motions, applications, declarations, affidavits, and other papers or documents necessary, appropriate, or desirable in connection with the foregoing, with such changes, additions, and modifications thereto as the Receiver shall approve, such approval to be conclusively evidenced by the Receiver's execution and delivery thereof; and

(dd) To commence ancillary court proceedings related to the Receiver or the Receivership Assets.

19. The Receiver is authorized to take any and all actions not specifically enumerated herein which are reasonably necessary and proper to preserve, protect, manage, operate, sell, lease, license, collect, compromise, or otherwise liquidate the Receivership Assets.

20. Nothing in this Order shall require the Receiver to advance funds for any purpose if the Receiver does not have such funds.

21. The Receiver shall not be liable for any expenses or accounts payable of any kind or nature, including, without limitation, unpaid payroll obligations, employee benefits, or related payroll tax obligations, arising on account of or with respect to any of the Receivership Assets and which were incurred prior to the Receiver taking possession of the Receivership Assets.

22. Except as may otherwise be expressly set forth herein, nothing in this Order shall grant any additional rights to trade creditors or general unsecured creditors of the Borrowers, whose claims are solely against the Borrowers. Such trade creditors' and general unsecured creditors' rights shall be solely determined in accordance with state law applicable to such claims.

23. Any execution of documents made by the Receiver pursuant to the powers, rights, and obligations conveyed by this Order shall be construed as having been made by the Receiver solely and exclusively in his capacity as Receiver, and not individually or as an actual party to this action or to any such agreement or writing.

24. The Obligors and Incumbent Individuals are enjoined from (a) interfering, directly or indirectly, with the Receiver's possession, management, or control of the Borrowers or the Receivership Assets; (b) contacting the

Borrowers' customers, vendors, lenders, landlords, agents, or employees on behalf of the Borrowers, or in a manner intended to disrupt its business, without the Receiver's prior written consent; and (c) taking any action that would hinder the Receiver's performance of the Receiver's duties under this Order.

25. The Incumbent Individuals shall fully cooperate with the Receiver in all respects, including to add the Receiver as an additional insured under all policies of insurance of the Borrowers and to promptly provide the Receiver with copies of all such insurance policies and related documents.

26. The Receiver, and any party to this case, may at any time apply to this Court by motion with notice to all attorneys of record for further or other instructions or for further powers necessary to enable the Receiver to perform the Receiver's duties properly.

27. The Receiver shall submit to this Court for its *in-camera* inspection and serve on the parties who have filed appearances through their counsel by email a monthly report that accounts for all receipts and disbursements concerning the performance of the Receiver's duties under this Order not later than the 20th day of each month for the preceding month, with the first monthly report due on or before January 20, 2027. Such monthly report shall not include any confidential customer-specific information. Elisabeth M. Von Eitzen of Warner Norcross + Judd LLP, on

behalf of Honeywell Aerospace US LLC, shall also be served the monthly report by email.

28. The Receiver and the Receiver Representatives shall be compensated for services at their standard hourly rates, plus reimbursement of all out-of-pocket fees, costs, and expenses. All such fees and expenses shall be payable solely from the Receivership Assets, and neither Plaintiff nor any of its affiliates shall be liable for them except to the extent Plaintiff expressly agrees in writing. Payment of fees and expenses payable to the Receiver and the Receiver Representatives in accordance with this Order shall take priority over payment of any claims, including those arising prior to the date on which the Receiver is appointed. The Receiver shall be authorized to obtain insurance coverage, including, but not limited to, coverage with respect to the liabilities, duties, and obligations of the Receiver hereunder (in the form of an errors and omissions policy, directors and officers policy, fiduciary policy, general liability, or otherwise), as the Receiver deems reasonably necessary or appropriate, the costs of which shall be payable from the Receivership Assets, and neither Plaintiff nor any of its affiliates shall be liable for such costs except to the extent Plaintiff expressly agrees in writing.

29. The Receiver's and Receiver Representatives' fees and expenses shall be an expense of administration of this receivership and shall be a first charge and lien against all assets of the Receivership Assets and against any proceeds realized

by the sale of any Receivership Assets, subject always to the terms and conditions of this Order.

30. The Receiver and the Receiver Representatives shall have no personal liability or otherwise in connection with any liabilities, obligations, liens, citations, code violations, or amounts owed to any of the Borrowers' creditors, taxing authorities, or other claimants because of the Receiver's duties as Receiver, whether arising before or after his appointment. The Receiver and the Receiver Representatives shall have no personal liability or otherwise with respect to any environmental liabilities arising out of or relating to the Receivership Assets. The Receiver and the Receiver Representatives shall not be personally liable for the satisfaction of claims, and shall have no claims asserted against them in their personal capacities or otherwise outside of the Receivership Assets, in any way relating to the Receiver's duties under this Order, including, without limitation in connection with the Receiver's capacity as Receiver for the Receivership Assets and the Borrowers, or as an agent, officer, or director of the Borrowers, except for claims that are adjudicated by a court of competent jurisdiction for which no appeal or motion to reconsider or similar motion may be or has been brought (without giving effect to any statutory basis to seek relief from judgment other than by appeal) which adjudicates and concludes that the Receiver or any Receiver Representative(s), as applicable, committed an act or omission constituting (a) gross negligence,

(b) willful misconduct, or (c) actual fraud. Any person or entity seeking to assert liability of any kind against the Receiver or any Receiver Representative, regardless of whether such person or entity has notice of this Order, must first obtain leave from this Court upon motion with due and proper notice to the Receiver and any applicable Receiver Representative(s). Any debts, liabilities, or obligations incurred by the Receiver in the course of this receivership, including the operation or management of the Receivership Assets, whether in the name of the Receiver or the Borrowers, or any other Receivership Asset, shall be the debt, liability, and obligation of the receivership estate only and not of the Receiver personally or of any Receiver Representative. All who are acting, or have acted, on behalf of the Receiver at the request of the Receiver, are protected and privileged with the same protections of this Court and this Order as the Receiver enjoys.

31. The receivership estate shall indemnify and hold harmless the Receiver and the Receiver Representatives for any judgment, costs, or expenses suffered or incurred by him or any of the Receiver Representatives as a result of actions instituted against him or them in relation to the discharge of their duties aforesaid or in carrying out or in furtherance of this Order; *provided that* nothing herein shall be construed to indemnify the Receiver or the Receiver Representatives to the extent that any judgment, costs, or expenses that has been found by this Court or another court of competent jurisdiction (after the conclusion of any appeals and further rights

of appeal) to have arisen from the gross negligence, willful misconduct, or actual fraud of the Receiver or any of the Receiver Representatives. In the event a suit is filed or a claim is made against the Receiver or any Receiver Representative, except as conditioned or limited above in this provision, the receivership estate shall reimburse the Receiver or the Receiver Representatives, as applicable, for the costs and fees of defending such action or claim, including, without limitation, any appeals thereof to final resolution and award of judgments. The indemnification obligations outlined in this Order shall survive the termination of the Receiver's appointment and the conclusion, dissolution, or discharge of the receivership estate.

32. The receivership shall continue until the Receiver has been discharged by order of the Court. The Court retains sole power to remove the Receiver or appoint a replacement Receiver.

33. The Receiver shall submit a final accounting for approval by the Court within sixty (60) days after the termination of the receivership or the Receiver's removal or resignation.

34. Within sixty (60) days after the termination of the receivership, the Receiver shall pay to Plaintiff all receipts remaining, if any, after payment of the items set forth herein, to the extent of Plaintiff's secured claim, to be applied to the Borrowers' obligations under the Loan Agreement, and shall otherwise distribute any remaining receipts as the Court directs.

35. At such time as the Receiver has either (a) sold all of the Receivership Assets, and/or (b) surrendered possession of the Receivership Assets in accordance with this Order, or at such other time as the Court may determine and direct upon appropriate motion by any party in interest, and upon the giving of notice and the approval by this Court of a final account of the Receiver's duties hereunder, the Receiver shall be released and discharged from further obligations hereunder.

36. Except for the above-captioned case and by leave of this Court, and except with respect to Plaintiff's right to foreclose its mortgage on the Ohio Real Property, during the pendency of the receivership, the Obligors, and all other persons, creditors and entities are hereby stayed (the "Stay") from taking any action that affects the Receivership Assets in any manner, including any action or lawsuit to establish or enforce any claim, right, or interest either for, against, on behalf of, or in the name of either Borrower, the other Obligors (solely pertaining to the Receivership Assets), the Receiver, Receivership Assets, or the Receiver's duly authorized agent acting in their capacities as such, including but not limited to, the following actions: (a) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the Receiver, the Borrowers, or the Receivership Assets to recover a claim or which would in any way transfer, or attempt to transfer, title to, encumber title to, or operate as a lien against the Receivership Assets or to recover upon a claim against

the Borrowers via execution against or levy upon the Receivership Assets wherever located, except that actions may be filed solely for the purpose of tolling any applicable statute of limitations; (b) the enforcement against the Receivership Assets of any judgment obtained before the date of this Order; (c) any act by any person or entity to obtain possession of the Receivership Assets or to exercise control of the Receivership Assets, including but not limited to judgment debtor examinations, garnishments, and orders to seize property; (d) any act to create, perfect, or enforce any lien against the Receivership Assets; (e) any act of interference with the Receiver's possession, management, or control of the Receivership Assets or otherwise interfere with the Receiver's duties; and (f) any act to interfere with the exclusive jurisdiction of this Court over the Receivership Assets (except as authorized in this Order).

37. The Stay shall not operate to preclude the filing of (a) any continuation statements, (b) any action to continue the perfection of any lien against the Receivership Assets, (c) any litigation related to any guaranty claims, (d) any litigation that does not relate to the Receivership Assets, (e) the filing or participation in any bankruptcy proceeding with respect to the Borrowers, or (f) any action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

38. Upon the entry of this Order, the Obligors, the Incumbent Individuals, and all of Borrowers' creditors and their respective attorneys, agents, and employees, and all other persons, firms, and corporations with interests of any kind in or with respect to the Receivership Assets, and all other persons and entities receiving actual notice of this Order, unless otherwise expressly authorized in writing by the Receiver or further ordered by this Court, shall refrain from taking any action prohibited by the Stay. The Receiver shall promptly serve a copy of this entered Order upon all known creditors of the Borrowers, including Avatar REIT I LLC.

39. Within ten (10) days after entry of this Order, the Receiver or Plaintiff shall, pursuant to 28 U.S.C. § 754, cause copies of the Complaint and a copy of this Order to be filed in the United States District Court for the Northern District of Indiana and the United States District Court for the Southern District of Ohio.

40. Any utility provider receiving notice of this Order shall establish and provide utility service to the Ohio Real Property and Indiana Real Properties, in the name of the Receiver and without the requirement of a supplemental deposit.

41. This Court retains jurisdiction to modify the terms of this Order and to expand or contract the rights, duties, and obligations of the Receiver, and to enter such other orders as the Court may deem necessary, just, and proper, from time to time during the pendency of this action.

42. The Receiver shall faithfully discharge all of his duties under this Order and shall obey all orders of this Court. The Receiver shall be deemed a fiduciary for the benefit of all persons having or claiming an interest in the Receivership Assets, including the Obligors.

43. The Receiver's actions at all times shall be commercially reasonable, and the Receiver is subject to the personal jurisdiction of this Court. The Receiver is entitled to rely on his business judgment, in consultation with the Receiver Representatives, in discharging his duties under this Order.

44. The Receiver's duty to act in its capacity is subject to the written acceptance of the receivership. Upon acceptance, the Receiver shall be bound by the terms of this Order and all obligations imposed hereby.

45. The Receiver must maintain the confidentiality of all non-public information of any customer of the Borrowers, including drawings, specifications, technical data, pricing, and purchase terms, in accordance with the Borrowers' agreements with such customer and applicable export control laws. The Receiver must not disclose any such information to Plaintiff, General Electric Company (d/b/a GE Aerospace), or any of their affiliates, or to any other competitor of such customer or prospective purchaser, except (a) with the customer's prior written consent, (b) in aggregated form that does not identify the customer, or (c) as ordered by the Court.

Any disclosure to a prospective purchaser must be subject to a further order by the Court in as agreed to by the applicable customer.

46. Any notice given to, or consent sought from, Plaintiff under Paragraphs 18(u), 18(bb), or 18(cc) must be given at the same time to each customer of the Borrowers that has filed an appearance in this action. Such customers must also receive the following notices: (a) notice of any proposed sale of assets used to produce that customer's parts, or of any proposed assignment or termination of that customer's contracts; (b) notice of any proposed abandonment, surrender, or relocation of such assets; (c) at least five (5) days' notice of any proposed cessation or material curtailment of production of that customer's parts; and (d) two (2) days' notice before the Receiver exercises his rights under Paragraph 41 of this Order.

47. Consultation with Plaintiff under Paragraph 11 or elsewhere in this Order confers no decision-making authority on Plaintiff and does not require the Receiver to follow any recommendation of Plaintiff. Plaintiff's consultation rights do not extend to customer-specific matters, including any customer's pricing, production allocation, scheduling, purchase orders, tooling, technical data, or contract performance, except as those matters are reported in aggregate form that does not identify any customer. If Plaintiff or any affiliate submits, or announces an intention to submit, a bid for any Receivership Assets, Plaintiff and its affiliates shall not thereafter receive non-public information about that sale process, including

competing bids, bidder identities, and bidding strategy. The Receiver shall not favor Plaintiff or its affiliates over any other customer because of Plaintiff's status as secured creditor, customer, prospective purchaser, or bidder, including in the allocation of capacity, materials, funding, personnel, equipment, certifications, purchase orders, contracts, or other resources; *provided that* the Receiver may allocate resources in the exercise of his business judgment based on contract terms, pricing, payment terms, program economics, and the terms of any financing approved by the Court, and any customer may fund or pay for its own production.

48. Nothing contained in this Order shall be construed to transfer title of any of the Receivership Assets to the Receiver.

**SO ORDERED.**

Dated: November 18, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge